FILED

MAR - 8 2018

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. | **4:18CR00197 RLW/JMB** |
| | ) | |
| PAUL EVERETT CREAGER, | ) | |
| | ) | |
| Defendant. | ) | |

**INDICTMENT**

**COUNT I (Wire Fraud - Solicitation of Investor)**

The Grand Jury charges that:

*Introduction*

1. At all relevant times, the Defendant Paul Everett Creager was a resident of Wildwood, Missouri which lies within the Eastern District of Missouri.

2. At all relevant times, the Defendant was engaged in residential real estate development in St. Louis County which lies within the Eastern District of Missouri. The Defendant did business through a number of entities.

3. The Defendant financed his business activities with, among other things, promissory notes, borrowing through at least one private lender and by selling interests in his entities to investors wishing to acquire equity.

4. One of the Defendant's main sources of financing for his development activities was M.L., an individual residing in the Eastern District of Missouri and, originally, a social acquaintance of Defendant.

*The Scheme*

5. Between October 2014 and September 2015, M.L. invested more than $2,500,000 in Defendant's business activities. M.L. invested as a partner, taking a fifty percent

equity stake in all of Defendant's development activities. M.L. planned to provide the capital for the development projects and Defendant would handle the operations of the business and the two would split the proceeds equally.

6. Although their agreement was not formalized in writing, Defendant made numerous material false representations to induce M.L. to invest.

7. Defendant represented himself to be personally wealthy. Defendant explained he owned an annuity worth more than five million dollars which was not liquid. Therefore, Defendant explained, he needed M.L.'s liquidity to avoid incurring fees and taxes that would be associated with tapping his annuity for working capital. In truth, Defendant had no such annuity, did not have a significant net worth during the relevant time period and had twice before declared personal bankruptcy.

8. Defendant represented that all of M.L.'s investments would be used for the real estate development business he and Defendant were undertaking. In truth, Defendant often diverted M.L.'s investments directly for his personal use. For example, December 30, 2014, Defendant received proceeds of one of M.L.'s contributions to the business in the amount of $205,960.68. The next day, Defendant used those funds to make a $1,000 deposit on a 2015 GMC Yukon Denali. Two days later, Defendant used $65,000 of those funds to complete his purchase of the Yukon. For further example, On September 10, 2015, Defendant received proceeds of another one of M.L.'s contributions to the business in the amount of $400,000. On September 22, 2015, the Defendant used $7,000 of those funds to make a downpayment on a 2015 Harley Davidson motorcycle.

9. Generally, the Defendant raised much more money from M.L., other investors and through loans than was necessary to fund his real estate development activities and used some of these proceeds not for business purposes but to maintain a luxury lifestyle which included a large residence, a large vacation residence, numerous luxury vehicles and extravagant trips.

10. Defendant during the relevant time period continued to falsely represent to M.L that M.L. was Defendant's sole partner and the sole source of financing for his business. Unbeknownst to M.L., Defendant solicited other partners and borrowed large sums of money from, among others, FMS, LLC, a hard money lender and had given FMS a priority interest in virtually all Defendant's personal and business assets.

11. By early 2017, Defendant's business was unable to meet its financial obligations and became delinquent to FMS.

12. On or about July 10, 2017, FMS initiated foreclosure on all of Defendant's business developments and on numerous personal assets of Defendant.   Other than the return of approximately $113,000, the investment of M.L. appears to have been wiped out.

*Offense Conduct*

13. On or about September 10, 2015, having devised the foregoing scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**PAUL EVERETT CREAGER,**

the Defendant herein did transmit and cause to be transmitted by means of wire, radio, television communication in interstate commerce, any writings, signs, signals, pictures, or

3

sounds to wit: a $400,000 wire transfer from M.L.'s financial account in Nebraska to an Everett Builders, LLC financial account in Missouri.

All in violation of Title 18, United States Code Section 1343.

### COUNT II (Wire Fraud -226 Wilson)

14. Between January 1, 2015 and continuing through May 6, 2015, the Defendant, through an entity called L and P Builders, LLC, engaged in the building of a residence at 226 Wilson, Kirkwood, Missouri which lies within the Eastern District of Missouri ("226 Wilson" or "the residence").

15. As a part of the construction of the residence, the Defendant retained the services of numerous subcontractors and agreed to pay those subcontractors for their services. One such subcontractor was Above and Below Contracting, LLC ("Above and Below") which provided storm sewer installation and related services for the construction of 226 Wilson and presented Defendant with a contract for $30,000 in advance of the May 6, 2015 closing on the sale of the residence.

16. As the residence neared completion, Defendant communicated with Security Title Insurance Company, LLC, a title Insurance company with offices in and doing business in the Eastern District of Missouri. Defendant helped prepare closing documents which would disburse the sale proceeds to L and P Builders, LLC, lenders and subcontractors as directed by the Defendant. These documents did not include disbursements to Above and Below.

17. After completing his instructions to Security Title, the title company required Defendant to prepare a "new construction closing affidavit" which averred, among other things that Defendant knew of no claims asserted by other parties as to the

4

property and further that all subcontractors have been paid in full for services, labor and materials. This averment was false and material as the Defendant knew because Above and Below had previously made a valid claim for payment of $30,000 for services rendered on the construction of 226 Wilson and had not been paid.

18. On May 6, 2015, the sale of 226 Wilson closed and the proceeds of the sale were disbursed to lenders, drywall contractors, concrete contractors, attorneys, architects and others who did work on the project. Defendant also received a distribution of $49,876.17 at closing.

19. Subsequent to the aforementioned closing, Above and Below contacted Defendant and Defendant refused to pay its bill. Above and Below then filed a valid mechanic's lien against 226 Wilson and sought payment of its bill from Security Title.

20. Because Security Title had issued title insurance on 226 Wilson in reliance on Defendant's false affidavit and the work of Above and Below related back to that property's title before closing and during the insured period, it paid off the lien filed by Above and Below in the amount of $32,167.40, representing Above and Below's unpaid bill and other related expenses.

21. On or about May 6, 2015, having devised a scheme to defraud and to obtain money by means of false and fraudulent representations, pretenses and promises and for the purpose of executing the same,

**PAUL EVERETT CREAGER,**

The Defendant herein, did transmit and cause to be transmitted by means of wire, radio and television communication in interstate commerce any writings, signs, signals, pictures, or sounds, to wit: the wire transfer from Security Title Insurance Agency, LLC to L and P

5

Builders, LLC $49,876.17, said wire traveling between the State of Iowa and the State of Missouri.

All in violation of Title 18, United States Code Section 1343.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One and Two, the defendant shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to said offense(s).

2. Specific property subject to forfeiture includes, but is not limited to, the following:

    A. 2015 GMC Yukon, VIN: 1GKS2CKJ9FR565012

    B. 2015 Harley Davidson FLHXS Street Glide Special, VIN: 1HD1KRM19FB605698

3. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offense of at least $724,024.14.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

                              A TRUE BILL

                              _____

                              FOREPERSON

JEFFREY B. JENSEN
United States Attorney


_____
Thomas C. Albus, #46224MO
Assistant United States Attorney

7